# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FEDERICO SANCHEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 04 C 0826 |
| | ) |
| KEVIN P. BOLGER, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff, a federal prisoner, has brought this *pro se* civil action pursuant to 42 U.S.C. § 1981. The plaintiff claims that the defendant, an attorney who was hired to represent the plaintiff in the now-closed criminal case *United States of America v. Sanchez-Rodriguez, et al*, Case No. 03 CR 0132 (N.D. Ill.), "completely abandoned a defense effort for which the [$17,000 retainer] fee obligated him." The plaintiff further maintains that since he terminated the legal agreement with the defendant, the latter has refused to return any portion of the retainer. The plaintiff contends that the defendant's actions are part of a "willful, calculated scheme to deprive the Plaintiff of his life savings predicated upon the Defendant's racial disdain for Mexican nationals." This matter is before the court for consideration of the parties' cross-motions for summary judgment. For the reasons set forth in this order, summary judgment will be granted in favor of the defendant and against the plaintiff.

## SUMMARY JUDGMENT STANDARDS

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Prime Northgate Plaza Ltd. Partnership v. Lifecare Acquisitions Corp.*, 985 F. Supp. 815, 817 (N.D. Ill. 1997). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Walker v. Northeast Regional Commuter Railroad Corp.*, 225 F.3d 895, 897 (7th Cir. 2000).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 393 (7th Cir. 1997), *cert. denied*, 523 U.S. 1118 (1998).

**FACTS**

The following facts are uncontested for purposes of this motion: The defendant, Kevin Bolger, is a licensed Illinois attorney who nearly exclusively practices criminal law in the state and federal courts. (Defendant's Exhibit B, Affidavit of Kevin Bolger, ¶¶ 2-4.) On February 5, 2003, the government charged the plaintiff, a Mexican national, in a two-count indictment alleging conspiracy to distribute cocaine. *See United States of America v. Sanchez, et al.*, Case No. 03 CR 132 (N.D. Ill.) (Complaint, p. 2; Defendant's Exhibit C, Grand Jury Indictment).

On February 7, 2003, the plaintiff [or his friends, relatives or "associates"] hired the defendant to represent him. (Complaint, p. 2.)

The defendant quoted and was paid a retainer of $17,000.00 to represent the plaintiff. (*Id.*)

The retainer included the fee for client interviews, preliminary investigation, discovery, and pre-trial practice. (Bolger Affidavit, ¶ 7.) A final fee was to be quoted when it was determined whether the case was to be tried or to be disposed of by a plea. (*Id.*)

Pursuant to the retainer agreement, the defendant performed the following acts:

(1) met with the plaintiff on numerous occasions at the Metropolitan Correctional Center to discuss his case;

(2) appeared before the Honorable James Moran on behalf of the plaintiff at six status and other court hearings;

(3) prepared and filed a motion to quash the plaintiff's arrest and suppress evidence seized during the course of the arrest;

(4) prepared and filed various discovery motions;

(5) conducted discovery with the government and reviewed all the discovery materials, spending many hours reviewing and cross-referencing the discovery records;

(6) listened to all audio tapes provided by the government no fewer than three times; reviewed all transcriptions of audio tapes provided by the government no fewer than three times; compiled notes with each listening and review;

(7) communicated with the government on the plaintiff's behalf, most notably regarding a possible agreed disposition of the criminal case;

(8) advised the plaintiff of his options, specifically informing the plaintiff that he (Bolger) did not believe the government could prove the conspiracy charge, but thought that the government could prove the possession with intent to distribute charge;

(9) calculated the plaintiff's sentence range under the Federal Sentencing Guidelines;

3

(10) counseled the plaintiff that it would be in his best interest to seek a plea inasmuch as under the applicable Federal Sentencing Guideline he could be awarded a two-point reduction for acceptance of responsibility as well as an additional point for timely advising the government of his intent to plead guilty, and that he could also avoid the assessment of additional points for obstruction;

(11) advised the plaintiff that he would be eligible for a sentence under the statutory minimum pursuant to the so-called safety value provisions of the Sentencing Guidelines if he accepted the plea;

(12) arranged a "proffer" by the plaintiff to the government after first advising the plaintiff of the purpose of the proffer, his rights during the proffer, and the necessity to be truthful during his proffer both regarding his role in the transaction and those of others; and

(13) attended the proffer. (Bolger Affidavit, ¶ 10.)

The government initially urged the plaintiff to plead guilty to the conspiracy count rather than the possession count, which carries a much higher sentencing range, because the government contended that the plaintiff was the leader or organizer of the drug conspiracy. (*Id.*, ¶ 11.)

Furthermore, the government ultimately terminated the proffer, believing that the plaintiff was being less than candid about his role in the transaction. (*Id.*, ¶ 12.)

The defendant urged the plaintiff to go to trial if the government persisted in pushing him to plead guilty on the conspiracy count, as the defendant did not believe the government could prove that count. (*Id.*, ¶ 13.) The plaintiff concurred. (*Id.*)

When informed that the plaintiff wanted to go to trial, the defendant advised the plaintiff that he would require an additional $18,000.00 to try the case. (*Id.*, ¶ 14.)

However, no part of this $18,000.00 was ever collected. (*Id.*)[1]

The defendant continued to press the government to accept the plaintiff's plea with respect to the possession charge and drop the conspiracy charge. (*Id.*, ¶ 15.).

In July or August 2003, during further conversations with the government, the defendant learned there was a possibility that the government would sign off on the proposed plea agreement; however, before the government gave final approval to the agreement, the defendant was contacted by another attorney who advised the defendant that he had been hired by the plaintiff's "sponsors" and that the defendant had been discharged. (*Id.*, ¶ 17.)

The defendant confirmed this with the plaintiff and then was given leave to withdraw as counsel. (*Id.*)

The plaintiff ultimately pleaded guilty to Count II (the charge of possession with intent to distribute) and was sentenced to 37 months in custody of the Bureau of Prisons. The government dropped the conspiracy count and the plaintiff ultimately accepted the plea agreement the defendant had negotiated. (Defendant's Exhibit X, Plea Agreement.)

The plaintiff never demanded the return of any of the fee prior to filing this lawsuit. (Bolger Affidavit, ¶ 20.)

Over the course of the last 27 years, the defendant has represented clients "of every imaginable racial and ethnic background, including people of Hispanic heritage." (*Id.*, ¶ 21.)

---

[1] In his summary judgment motion, the plaintiff asserts for the first time that the defendant was paid the additional $18,000 "in small quantities of cash payments." (Plaintiff's Motion, p. 5.) However, the court will disregard that new claim. Apart from the fact that it is inappropriate to make that new claim at this stage of the proceedings, the plaintiff has submitted no evidence in support of his claim that he is entitled to $18,000 more than originally stated. The court need make no credibility determination, as only the defendant has submitted an affidavit on that point.

The defendant asserts that he provided representation to the plaintiff that was "no different than he would have provided any other similarly situated criminal defendant." (*Id.*, ¶ 23.)

The defendant strongly denies ever having made any derogatory remarks about Mexicans or any other racial or ethnic group during conversations with the plaintiff or the plaintiff's associates. *See* Defendant's Exhibit B, Bolger Affidavit, ¶ 22. The defendant additionally maintains that he does not discriminate on the basis of race or ethnicity, "for if he did he would soon be out of business." *Id.*, ¶ 21. Nevertheless, for purposes of this motion, the court will accept as true that the defendant made disparaging remarks about persons of Mexican descent. The court may grant summary judgment if facts are in dispute, so long as those facts are not outcome determinative. *Matter of Wildman*, 859 F.2d 553, 556 (7th Cir. 1988); *Nash v. DeTella*, No. 00 C 2784, 2001 WL 1160840, *2 n. 5 (N.D. Ill. Oct. 2, 2001) (Zagel, J.)

## DISCUSSION

No outcome-dispositive facts are in dispute and the court finds that the defendant is entitled to judgment as a matter of law. Even viewing the record in the light most favorable to the plaintiff, no reasonable person could conclude that the defendant violated the plaintiff's civil rights in his performance of the contract to represent the plaintiff.

Title 42, United States Code, Section 1981 prohibits discrimination in the making and enforcement of contracts. *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989). Under 42 U.S.C. § 1981(a),

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like

punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

"Making and enforcing contracts" includes the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

The plaintiff's allegations articulate a *prima facie* case. To state a claim under Section 1981, the plaintiff must allege that (1) he is a member of a racial minority; (2) the defendant had the intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the rights or activities listed in the statute (that is, in the making or enforcement of the contract). *Batchelor v. Village of Evergreen Park*, No. 03 C 5337, 2004 WL 2057262, *2 (N.D. Ill. Aug. 6, 2004) (Moran, J.), *citing Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). The plaintiff contends that the defendant defrauded him of his life savings based upon the defendant's disdain for Mexican nationals, accepting a large fee and then essentially doing nothing but attempting to railroad the plaintiff into pleading guilty to a crime he did not commit. Once the defendant has come forth with affirmative evidence establishing his non-discriminatory fulfillment of his contractual obligations, plaintiff is required to show some basis for discrediting the defendant's chronology of events. *See Patton v. Indianapolis Public School Board*, 276 F.3d 334, 338 (7th Cir. 2002)("Discrimination claims under both Title VII and § 1981 are analyzed in the same manner.") *See Dandy v. United Parcel Service, Inc.*, 338 F.3d 263, 272 (7th Cir. 2004) ("A plaintiff may prove intentional discrimination under . . . §1981, through direct or circumstantial evidence (direct method) or resort to the indirect burden-shifting method described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973))."

While Fed. R. Civ. P. 56 governs the parties' summary judgment obligations, Local Rule 56.1 (N.D. Ill.) reflects "an attempt to make the parties' respective summary judgment obligations explicit." *See Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994). Local Rule 56.1(b) requires a party opposing a summary judgment motion to file a memorandum of law, any materials or affidavits referred to in Fed. R. Civ. P. 56(e), and a response to the movant's statement of facts. Local Rule 56.1(b)(1)-(3). This response

> shall contain . . . a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon and a statement consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

Local Rule 56.1(b)(3)(A)-(B). Failure to properly controvert a moving party's statement of facts results in the moving party's version of the facts being deemed admitted. Local Rule 56.1(b)(3)(B). Strict enforcement of Local Rule 56.1's requirements has been consistently upheld by the Seventh Circuit, as the court is not required to "scour the record in search of evidence to defeat a motion for summary judgment." *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002) (internal quotations omitted).

Here, the plaintiff's own summary judgment motion does not comport with the requirements of Fed. R. Civ. P. 56 or Local Rule 56.1; furthermore, the plaintiff has failed altogether to respond to the defendant's cross-motion for summary judgment. Other than his own unsworn assertions, the plaintiff has filed to provide any evidence whatsoever of discrimination. These assertions, without any factual support whatsoever in the record, cannot be used to defeat a motion for summary judgment. *Ballance v. City of Springfield*, 424 F.3d 614, 620 (7th Cir. 2005); *see also Rand v. CF*

*Indus., Inc.*, 42 F.3d 1139, 1146-47 (7th Cir.1994). Unsupported statements in a brief are not evidence and cannot be given any weight. *See, e.g., Antonelli v. Sherrow*, No. 02 C 8714, 2005 WL 2338813, at *4, n.3 (N.D. Ill. Sep. 21, 2005) (Nordberg, J.), *citing In the Matter of Morris Paint and Varnish Co.*, 773 F.2d 130, 134 (7th Cir. 1985).

Moreover, the plaintiff's summary judgment brief significantly back-pedals from his complaint, characterizing the defendant's representation as "ineffective" rather than the complete "abandonment" he described in his complaint. Moreover, although the plaintiff criticizes the quality of the defendant's representation, he admits that the defendant, at the very least, conducted discovery, filed a motion to quash his arrest and suppress evidence, made six court appearances, and held five personal interviews during the six months he represented the plaintiff. *See* Plaintiff's Motion for Summary Judgment, pp. 4-6.

In the context of a civil rights action, the court may nor consider whether the defendant satisfied the plaintiff's Sixth Amendment right to effective assistance of counsel. A ruling in the petitioner's favor on such a claim could call into question the validity of his confinement. The petitioner's only remedy for ineffective assistance of counsel is to file a motion to vacate or attack his sentence under 28 U.S.C. § 2255. "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). The courts have uniformly held that *Heck* applies with equal force to federal prisoners. *See Robinson v. Jones*, 142 F.3d 905, 907 (6th Cir. 1998); *Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995); *Stephenson v. Reno*, 28 F.3d 26, 27 (5th Cir. 1994).

Thus, the sole focus of this case is whether the defendant, because of plaintiff's national origin, performed his contract to represent the plaintiff in a manner less favorable to plaintiff than his representation of non-Mexican similarly situated clients, not whether the defendant could have done a better job than he did.

The defendant states, without contradiction by the plaintiff or any other testimonial or documentary evidence, that the actions he took in furtherance of the plaintiff's defense included meeting with the plaintiff on numerous occasions at the Metropolitan Correctional Center to counsel him and discuss his case; appearing on the plaintiff's behalf in court hearings; preparing and filing a motion to quash the plaintiff's arrest and to suppress evidence; preparing and filing various discovery motions, as well as reviewing and cross-referencing the discovery materials; listening and compiling notes with respect to the government's audiotapes; attending the proffer; and negotiating with the government for the plaintiff to plead guilty to the lesser charge. In fact, the plaintiff ultimately accepted the plea agreement arranged by the defendant.

According to the complaint, the defendant failed to investigate evidence that could have established the plaintiff's innocence. However, the defendant's uncontroverted affidavit and the plaintiff's own concessions establish that the defendant, after some investigation, came to the professional conclusion that the government would probably be able to prove the non-conspiracy count. The plaintiff additionally contends that the defendant tried to coerce him into pleading guilty to crimes he did not commit. However, the defendant discharged an important obligation in advising the plaintiff of his options, particularly the sentencing consequences of not accepting the plea agreement should the government ultimately prove its case against him and, conversely, the favorable consequences of entering the proposed plea. (The plaintiff must have agreed, as he

accepted the plea agreement the defendant had set up.) The plaintiff further states that the defendant tried to railroad the plaintiff into acting as an informant and lying about matters concerning which the plaintiff had no knowledge. Again, however, the proffer was a legitimate cooperation strategy that might have reduced the plaintiff's sentence had the government believed that the plaintiff provided assistance. In any event, the plaintiff cannot sue on the basis of his innocence and ignorance as to the criminal enterprise after entering a guilty plea in which he expressly admitted that he was "guilty of the charge contained in Count Two of the indictment" and categorically admitted the facts set forth in the agreement. *See* Plea Agreement, ¶ 5, *et seq.*

The inescapable conclusion is that the defendant provided meaningful representation. Irrespective of whether the defendant made racist remarks (which he denies), whether the parties had communication problems (which they dispute), or whether the plaintiff was initially grateful to the defendant for all his efforts (the defendant states in his affidavit that the plaintiff thanked him "for all his hard work" and "didn't understand why 'they' wanted him to get a new lawyer"), plaintiff has proffered no evidence that would permit the inference that defendant's representation was less effective than he ever provided to a person of non-Mexican origin.

The Supreme Court has instructed that the nonmovant has the burden of adducing "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (citations omitted); *accord, e.g., Smith*, 129 F.3d at 427 ("A party may not defeat a properly focused motion for summary judgment by relying on evidence that is less than significantly probative." Under this standard, the plaintiff's case, which appears to be premised entirely on the plaintiff's subjective belief and defendant's

11

alleged deprecating remarks, must fail. *See, e.g., Sybron Transition Corp. v. Security Ins. Co.*, 107 F.3d 1250, 1255 (7th Cir. 1997) ("A party must present more than mere speculation or conjecture to defeat a summary judgment motion"); *see also Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001).

In sum, for all of the above-stated reasons, the court finds that no material facts are in dispute and concludes that the defendant is entitled to judgment as a matter of law. The plaintiff has failed to make out a triable issue as to either (a) whether the defendant acted with discriminatory intent or (b) whether the plaintiff's right to contract or (to receive contractual benefits) was impaired.

IT IS THEREFORE ORDERED that the plaintiff's motion for final judgment by default [#35] is denied as moot; that the plaintiff's motions for summary judgment [docket nos. 29 and 30] are denied; and that the defendant's motion for summary judgment [#32] is granted. The clerk is directed to enter judgment in favor of the defendant. The case is terminated.

Enter: *[signature]*
JOAN HUMPHREY LEFKOW
United States District Judge

Date: November 21, 2005